UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE, | |
| *Plaintiff,* | <u>Civil Action No. 2:24-cv-11106</u> |
| v. | Hon. Linda V. Parker |
| UNIVERSITY OF DETROIT MERCY SCHOOL OF DENTISTRY, and UNIVERSITY OF DETROIT MERCY, | Mag. Curtis Ivy, Jr. |
| *Defendants.* | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF CHARLES BLACKWELL TO INTERVENE FOR THE LIMITED PURPOSE OF CHALLENGING PLAINTIFF'S USE OF A PSEUDONYM**

*Attorneys for Plaintiff John Doe*

**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

101 Federal Street, 19th Floor
Boston, Massachusetts 02110
(617) 209-2188

**BOGAS & KONCIUS P.C.**
31700 Telegraph Road, Suite 160
Bingham Farms, Michigan 48025
(248) 502-5000

1.

## STATEMENT OF ISSUE PRESENTED

Where Plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings, may he proceed pseudonymously?

Answer:  Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Doe v. Porter,* 370 F.3d 558, 560 (6th Cir. 2004).

- *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005).

- *Doe v. Mass. Inst. of Tech.,* 46 F.4th 61, 70-72, 76 (1st Cir. Aug. 24, 2022).

- *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

- *Doe 1 v. Gupta*, No. 3:22-CV-1122, 2023 WL 2734674, at *3 (N.D. Ohio Mar. 31, 2023).

- *Michigan Prot. & Advoc. Serv., Inc. v. Caruso, No*. 5:05-CV-128, 2006 WL 958496, at *3 (W.D. Mich. Apr. 10, 2006).

- *Doe v. Provident Life & Acc. Ins*. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997).

**INTRODUCTION**

Plaintiff John Doe ("Plaintiff" or "John Doe" or "John"), by and through his attorneys Nesenoff & Miltenberg, LLP, and Bogas & Koncius P.C., respectfully submits this Memorandum of Law in Opposition to the Motion filed by Charles Blackwell ("Blackwell") to Intervene for the Limited Purpose of Challenging Plaintiff's Use of a Pseudonym. [ECF. No. 8]. As discussed *infra*, the Motion should be denied because John Doe's privacy interests substantially outweigh the presumption of open judicial proceedings. *See Doe v. Porter,* 370 F.3d 558, 560 (6th Cir. 2004).

**FACTS[1]**

John Doe was enrolled in the University of Detroit Mercy School of Dentistry ("UDM-SOD") from the fall of 2016 to February 2019 in the Doctor of Dental Surgery program. [ECF No. 1 at ¶¶ 1, 15]. In the entire two and a half years that John was a student on the UDM-SOD campus, he never violated the UDM-SOD's Professional and Academic Conduct Policy set forth in the School of Dentistry's Academic Policies Handbook (the "Handbook"). [*Id.* at ¶ 17].

During the 2016-2017 academic year, John disclosed to the UDM-SOD that he had a disability within the meaning of that word under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), for which John required reasonable academic accommodations under applicable law and the Handbook. [*Id.* at ¶¶ 18-19].

In the spring of 2018, John saw a psychiatrist who was recommended to him by UDM-SOD, for counseling and treatment, who prescribed medication to treat John's ADHD. [*Id.* at ¶¶ 20-21]. The medication prescribed caused John to have side effects that affected John's behavior

---

[1] A full recitation of the facts underlying Plaintiff's claims, which are incorporated by reference herein, can be found in the Complaint. [ECF No. 1]. In the interest of being respectful of the Court's time, the facts that are pertinent to Plaintiff's opposition to Blackwell's Motion set forth here.

3.

by making him acutely aware, responsive, and overly talkative, side effects which were, themselves, a disability requiring an accommodation under applicable law and the Handbook. [*Id.* at ¶¶ 24-26].

During the 2017-18 academic year, John saw a personal counselor offered at UDM-SOD's Office of Health & Wellness. [*Id.* at ¶¶ 32-33]. UDM had hired Taryn Bailey Andersen ("Andersen"), an entry-level social worker, with a limited license, Masters Social Workers Limited ("LMSW") license, to work as a personal counselor, and she introduced herself to John and invited him to stop by and "chat." [*Id.* at ¶¶ 34, 37]. In November 2018, John met with Andersen, in her capacity as a personal counselor, and confided in her about his personal life, including an embarrassing and hurtful experience in which, as an undergraduate at Baylor University, he had been the subject of false allegations by a classmate. [*Id.* at ¶¶ 39-43].

Based on John's confidences, Andersen erroneously labeled him a "stalker." [*Id.* at ¶¶ 44-48]. Upon information and belief, Andersen instigated a baseless "no contact order" that prohibited John from seeing a classmate at UDM-SOD, "Jane Roe" with UDM-SOD's Office of Academic Administration [*Id.* at ¶¶ 51-52, 170]. Anderson was neither a psychologist nor a licensed social worker [*id.* at ¶¶ 75, 78, 169] and spread unsubstantiated rumors that John was a "stalker" while he was a student at Baylor University. [*Id.* at ¶¶ 50, 52, 54-56, 61, 66-69, 170].

John, whose psychiatrist was unavailable, requested a referral from UDM-SOD'S Office of Health & Wellness to another psychiatrist and, in November 2018, he saw a different psychiatrist, Dr. Mark Silverman, for treatment of his ADHD and the side effects he was having from his prescription medication. [*Id.* at ¶¶ 61-64, 81-82]. After referring John to Dr. Silverman, Andersen left numerous voice mail messages for Dr. Silverman, urging him to proceed with "involuntary hospitalization" of John. [*Id.* at ¶ 99].

4.

Andersen's supervisor, Dr. Annamaria Silveri, the Director of the Personal Counseling & Wellness Center and head of UDM's Title IX office, was not John's treating physician but urged Dr. Silverman to declare John "unfit" for dental school. [*Id.* at ¶¶ 35-36, 100]. Dr. Silverman evaluated John in November and did not find him unfit for UDM-SOD. [*Id.* at ¶¶ 101-102].

In December 2018, John received a letter from Mert N. Aksu ("Dean Aksu" or the "Dean"), DDS, Professor and Dean of USM-SOD, on which Andersen was copied, placing John on an involuntary leave of absence, allegedly for violating the baseless NCO and non-specific allegations that he had exhibited unusual behaviors. [*Id.* at ¶¶ 109-115]. Dean Aksu's letter advised John that he had failed to meet "expected standards for Fitness for the Profession," and cited the entire list of guidelines of the School of Dentistry's 2018-2019 Academic Policies Handbook. [*Id.* at ¶ 112]. The Dean's letter did not apprise John of any specific violation of the school's standards of Professionalism or Fitness. [*Id.* at ¶¶ 116]. Dean Aksu characterized John's involuntary leave as a "grant" of an "indefinite leave of absence," although John never requested such leave. [*Id.* at ¶ 117].

John wrote to the Dean, both explaining that placing him on involuntary leave was tantamount to a dismissal from the UDM-SOD because it would cause him to miss more than a few days of the upcoming school session, and also informing him that he was being treated for his disability. [*Id.* at ¶¶ 117, 120].

John's psychiatrist, Dr. Silverman, contacted the Dean to inform him that John was in treatment both for side effects for medication for John's longstanding disability, ADHD, and Social (pragmatic) Communication Disorder ("SCD"), which involves difficulties in social communication and interaction that "satisfy Criteria A of Autistic Spectrum Disorder," and impairs

5.

a person's ability to communicate socially and conform to appropriate communications that match social context. [*Id.* at ¶ 123-129].

In January 2019, Dean Aksu dismissed John from UDM-SOD based on so-called "observations of [his] pattern of conduct." [*Id.* at ¶ 138]. In February 2019, John's written request for an appeal of the Dean's decision was denied by the Dean's appointed "Appeals Review Committee" without a hearing. [*Id.* at ¶¶ 138-146].

As alleged in the Complaint, UDM-SOD violated John's rights under numerous provisions of the Handbook, including protocols for leave and student disciplinary actions, [*id.* at ¶¶ 155-159], John's right to receive an accommodation for disabilities which are recognized under the ADA and Section 504 [*id.* at ¶¶ 160-167], John's right to confidentiality in professional counseling sessions provided by Andersen [*id.* at ¶¶ 168-171], John's due process and appeal rights in disciplinary matters [*id.* at ¶¶ 172-178], and John's right to continue attending school during the pendency of any appeal of student discipline [*id.* at ¶¶ 179-182].

John has suffered damages from UDM's unlawful conduct, including: (a) his wrongful removal from his degree program at USM-SOD, (b) his wrongful stigmatization as a "stalker," (c) the permanent notation on his school record that he was removed from UDM, which makes it unlikely if not impossible that John will ever be able to transfer to another professional school or become a dentist, and (d) emotional distress and anxiety. [*Id.* at ¶¶ 183-190].

On April 25, 2024, John filed his Complaint [ECF Doc. No. 1] and, given the highly personal and sensitive nature of the allegations, contemporaneously filed an *ex parte* motion to proceed under a pseudonym with both a supporting memorandum of law [ECF Doc. No. 2] and a declaration by Doe's attorney, Brian E. Koncius, Esq. [ECF Doc. No. 2-1].

On July 1, 2024, Blackwell filed his Motion to Intervene for the Limited Purpose of Challenging the Plaintiff's Use of a Pseudonym ("Motion"), pursuant to Fed. R. Civ. P. 24(b). [ECF Doc. No. 8].

On July 5, 2024, Defendants UDM-SOD and UDM (together, "Defendants") filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). [ECF Doc. No. 9]. Defendants have not taken any position on Plaintiff's motion to proceed under a pseudonym and have neither joined Blackwell's Motion nor otherwise opposed Plaintiff's motion to proceed under a pseudonym.

## ARGUMENT

### I.    Legal Standard

Courts are permitted to "excuse plaintiffs from identifying themselves in certain circumstances" to overcome the requirement that the names of all parties must be stated in the complaint, per Fed. R. Civ. P. 10. *Doe v. Porter,* 370 F.3d 558, 560 (6th Cir. 2004); *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

The Sixth Circuit holds that courts should consider whether "a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings" based on factors that include, but are not limited to: "(1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information 'of the utmost intimacy'; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether plaintiffs are children (internal citations omitted)." *See Doe v. Porter,* 370 F.3d at 560. When determining whether such an exception is justified, the factors cited by *Porter* are by no means exhaustive. *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005) (a court may consider

7.

the *Porter* factors "among others"); *see also Doe v. Mass. Inst. of Tech.,* 46 F.4th 61, 70-72, 76 (1st Cir. Aug. 24, 2022).

**II.     Plaintiff's Privacy Interests Weigh in Favor of Pseudonym Status**

Rule 10(a) of the Federal Rules of Civil Procedure provides, in part, that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).  However, an overwhelming majority of jurisdictions have found that parties may proceed by pseudonym under particular circumstances. *E.g., Doe 1 v. Gupta,* No. 3:22-CV-1122, 2023 WL 2734674, at *3 (N.D. Ohio Mar. 31, 2023) ("The discretion to permit pseudonymous litigation relies on fact-specific inquiries.").

As outlined in Doe's Memorandum of Law in Support of Plaintiff's *Ex Parte* Motion to Proceed Under a Pseudonym, a balance of non-exhaustive factors weigh in favor of permitting Plaintiff to proceed under a pseudonym.  These factors include the following: (a) that Plaintiff John Doe "reasonably fears that coming out of the shadows will cause him severe harm" due to the reputational harm caused by the false allegations of "stalking" and his unwarranted removal from a professional degree program [ECF Doc. No. 9 at 4-6]; (b) that Doe will be required to disclose information of the utmost intimacy in this litigation [ECF Doc. No. 9 at 7]; (c) the harm to innocent non-parties, whose identity would be disclosed (including UDM-SOD student "Jane Roe," the student who was the subject of Doe's baseless NCO) [ECF Doc. No. 9 at 7-8]; (d) the prevention of deterring similarly situated future litigants [ECF Doc. No. 9 at 8-9]; and (e) the absence of any prejudice to Defendants [ECF Doc. No. 9 at 9].

With respect to *supra* factor "a," as alleged in the Complaint, Plaintiff has been falsely accused of stalking a female student. Plaintiff has not been charged with any such criminal conduct yet requiring him to disclose his name under these circumstances would doubtless subject him to experiencing the kind of "infamy associated with criminal behavior." *Porter,* 370 F.3d at 560.

8.

Relevant to *supra* factor "b," the disclosure of intimate information, the Third Circuit considers "the extent to which the identity of the litigant has been kept confidential." *Doe v. Princeton Univ.*, No. CV 19-7853 (BRM), 2019 WL 5587327, at *3 (D.N.J. Oct. 30, 2019). Courts have found that a "litigant has made substantial efforts to maintain anonymity where that litigant has limited his disclosure of the sensitive information to few other people." *Id.* For example, courts have held that a litigant's limited disclosure of his own health care information weighs in favor of pseudonym status. *See, e.g., Doe v. Provident Life & Acc. Ins*. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997) (finding plaintiff's limited disclosure of his mental illness "to his immediate family, medical providers and his counsel" weighed in favor of allowing pseudonym status).

Here, as alleged in the Complaint, Doe suffers mental impairments, ADHD and Social (pragmatic) Communication Disorder ("SCD"), which involves difficulties in social communication and interaction that "satisfy Criteria A of Autistic Spectrum Disorder," that constitute disabilities under applicable law, and which he has disclosed to his health care providers and to UDM-SOD on a need-to-know basis. The sensitivity and confidentiality of this information, and the likely reality that Doe will suffer stigmatization by its disclosure, whether as a student or future employee, weigh in favor of his motion. *See Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 468 ("Unfortunately, in our society, there is a significant stigma associated with being identified as suffering from a mental illness."). Courts have recognized that the public interest "in preventing the stigmatization of litigants with mental illnesses" weighs in favor of pseudonym status. *See, e.g., id.*; *Michigan Prot. & Advoc. Serv., Inc. v. Caruso, No*. 5:05-CV-128, 2006 WL 958496, at *3 (W.D. Mich. Apr. 10, 2006) ("the public does not have a legitimate expectation in the disclosure of private health information").

9.

With respect to *supra* factor "d," (prevention of deterring similarly situated future litigants), Doe has alleged that Defendants breached their duties under the Handbook to provide accommodations for mental health impairments recognized as disabilities under the ADA and Section 504. [ECF Doc. 1 at ¶¶ 207-212]. In such cases, courts have granted pseudonym status to avoid deterring others with mental illnesses from suing in order to vindicate their rights, "merely because they fear that they will be stigmatized in their community if they are forced to bring suit under their true identity." *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 468.

With respect to *supra* factor "e," (the absence of any prejudice to Defendants), the fact that Defendants have not opposed Plaintiff's motion to proceed by pseudonym further indicates the appropriateness of allowing him to proceed by pseudonym. *See Doe v. Cuyahoga Cnty*, No. 1:22-cv-1677, 2023 WL 2374870, at *1 (N.D. Ohio March 6, 2023). Defendants have no doubt as to who is suing them and permitting Plaintiff to proceed pseudonymously poses no manageability issues for the Court. *See, e.g., Doe v. City of Detroit*, No. 18-CV-11295, 2018 WL 3434345, at *3 (E.D. Mich. July 17, 2018) (concluding there would be no prejudice to Defendants because "Doe only wishes to shield her name from use in public court records, and not prevent the City from using it in order to obtain discovery"); *compare Does v. Shalushi,* No. 10-11837, 2010 WL 3037789, at *4 (E.D. Mich. July 30, 2010) (noting "manageability problems that could result from allowing the plaintiffs to proceed anonymously" in class action suit).

Finally, while the issues in the Complaint may have some interest to the public, Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings. Blackwell has indicated in his memorandum that he wishes to file a public records request with the Baylor University Police Department "to confirm the factual allegations made by Plaintiff Doe that he has never been involved with a stalking or harassment incident at Baylor University." [ECF

Doc. No. 8 at 9]. As alleged in the Complaint, no such public record exists. However, even if such record did exist, there is no guarantee that the disclosure of Doe's name in this lawsuit would enable Blackwell to obtain such record. Moreover, to the extent that such a record exists and is relevant to this litigation, its existence would come to light in the normal course of litigation, following discovery, regardless of Doe's pseudonym status.

## CONCLUSION

Based on the foregoing, Plaintiff John Doe respectfully requests that the Court deny the Motion filed by Charles Blackwell to Intervene for the Limited Purposes of Challenging the Plaintiff's Use of a Pseudonym.

**Dated:**      **Bingham Farms, Michigan**
               **July 15, 2024**

                               **Respectfully submitted,**

                               *Attorneys for Plaintiff John Doe*

                               **NESENOFF & MILTENBERG, LLP**

                               **By:** */s/ Andrew T. Miltenberg*

                               **Andrew T. Miltenberg**
                               **(*Pro Hac Vice* Forthcoming)**
                               **363 Seventh Avenue, Fifth Floor**
                               **New York, New York 10001**
                               **(212) 736-4500**
                               **amiltenberg@nmllplaw.com**

                               **Tara J. Davis**
                               **(*Pro Hac Vice* Forthcoming)**
                               **Regina M. Federico**
                               **(*Pro Hac Vice* Forthcoming)**
                               **Julie A. Sacks**
                               **(*Pro Hac Vice* Forthcoming)**
                               **101 Federal Street, Nineteenth Floor**
                               **Boston, Massachusetts 02110**
                               **(617) 209-2188**
                               **tdavis@nmllplaw.com**


rfederico@nmllplaw.com
jsacks@nmllplaw.com

-and-

**BOGAS & KONCIUS P.C.**

By: */s/ Brian E. Koncius*

**Brian E. Koncius**
**31700 Telegraph Road, Suite 160**
**Bingham Farms, Michigan 48025**
**(248) 502-5000**
**bkoncius@kbogaslaw.com**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

Dated: July 15, 2024          By: */s/ Brian E. Koncius*
                                             Brian E. Koncius

