# EXHIBIT A

# *Kikuchi v. Perry*

United States District Court for the Eastern District of Michigan, Southern Division

January 31, 2017, Decided; January 31, 2017, Filed

Case No. 16-11182

**Reporter**
2017 U.S. Dist. LEXIS 12904 *; 2017 WL 411344

MASAO KIKUCHI, Petitioner, v. MITCH PERRY, Respondent.

**Prior History:** *People v. Kikuchi, 2013 Mich. App. LEXIS 2627 (Mich. Ct. App., Oct. 18, 2013)*

**Counsel:** [*1] Masao Kikuchi, Petitioner, Pro se, NEWBERRY, MI.

For Mitch Perry, Respondent: David H. Goodkin, Michigan Attorney General, Lansing, MI; Laura Moody, Michigan Department of Attorney General, Lansing, MI.

**Judges:** ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT H. CLELAND

## Opinion

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO APPOINT COUNSEL [Dkt. # 9], GRANTING PETITIONER'S MOTION TO AMEND [Dkt. # 10], DENYING PETITIONER'S MOTION TO PROCEED ANONYMOUSLY [Dkt. # 11], GRANTING RESPONDENT'S MOTION TO DISMISS [Dkt. # 12], DISMISSING THE HABEAS CORPUS PETITIONS [Dkt. # 1 and # 3], AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

This matter has come before the court on petitioner Masao Kikuchi's *pro se* habeas corpus petition under *28 U.S.C. § 2254* and respondent Mitch Perry's motion to dismiss the petition. Also pending before the court are Petitioner's motion for appointment of counsel, his motion to amend the habeas petition, and his motion to proceed anonymously.

The court agrees with Respondent that substantive review of Petitioner's claims is barred by the statute of limitations, *28 U.S.C. § 2244(d)*. Accordingly, Respondent's motion to dismiss will be granted, and the habeas petition will be dismissed as untimely. Additionally, [*2] for the reasons given below, the motions to appoint counsel and to proceed anonymously are denied, and the motion to amend is granted.

## I. BACKGROUND

Petitioner was charged in Wayne County, Michigan with three counts of criminal sexual conduct in the first degree, *see Mich. Comp. Laws § 750.520b(1)*, three counts of child sexually abusive activity, *see Mich. Comp. Laws § 750.145c(2)*, and three counts of possession of child sexually abusive material, *see Mich. Comp. Laws § 750.145c(4)*. On March 16, 2007, Petitioner pleaded guilty in Wayne County Circuit Court to one count of first-degree criminal sexual conduct and one count of child sexually abusive activity. In return, the prosecutor dropped the other seven charges, and the parties agreed to a sentence of ten to thirty years.

On April 2, 2007, the trial court sentenced Petitioner to concurrent terms of ten to thirty years in prison for the criminal sexual conduct and ten to twenty years in prison for the child sexually abusive activity. Petitioner did not appeal his convictions or sentence, and the deadline for doing so expired on April 2, 2008, one year after he was sentenced.[1]

Several years later, in March of 2013, Petitioner filed a motion for relief from judgment in the state trial court. He alleged that his trial attorney [*3] failed to explain the ramifications of his guilty plea, that his guilty plea was not voluntary and knowing, and that his sentence exceeded the sentencing guidelines. The trial court

---

[1] *See Mich. Ct. R. 7.205(G)(3)*. This rule currently provides defendants in criminal cases with six months in which to appeal their convictions to the Michigan Court of Appeals, but prior to the rule's amendment in June of 2011, the deadline was twelve months. *See* Staff Comment to the June 2011 amendment to *Rule 7.205*.

denied Petitioner's motion, stating that Petitioner was aware of the direct consequences of pleading guilty, that his plea was voluntary and understanding, and that his sentence was valid. *See People v. Kikuchi*, No. 07-004084-01 (Wayne Cty. Cir. Ct. June 12, 2013) (unpublished).

Petitioner appealed the trial court's decision on the basis that his sentencing agreement was misleading and, therefore, his guilty plea was not knowing and voluntary. The Michigan Court of Appeals denied leave to appeal due to Petitioner's failure to establish entitlement to relief under [Michigan Court Rule 6.508(D)](). *See* [People v. Kikuchi, No. 316979, 2013 Mich. App. LEXIS 2627 (Mich. Ct. App. Oct. 18, 2013)]() (unpublished). On May 27, 2014, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Kikuchi, 495 Mich. 1006, 846 N.W.2d 562 (Mich. 2014)*.

On December 8, 2014, Petitioner filed a second motion for relief from judgment. He claimed that the prosecutor arbitrarily picked a sentence of ten to thirty years and also deceived him by stating that the plea agreement was "less than standard." Additionally, Petitioner claimed **[*4]** that he was denied his right to counsel at a critical stage due to defense counsel's ineffectiveness and that his guilty plea was invalid because the trial court did not advise him of his rights on the record.

The trial court denied Petitioner's motion, *see People v. Kikuchi*, No. 07-004084-01-FC (Wayne Cty. Cir. Ct. Feb. 9, 2015) (unpublished), and the Michigan Court of Appeals dismissed Petitioner's subsequent appeal for lack of jurisdiction. The Court of Appeals stated that Petitioner's motion for relief from judgment was a successive motion and that Petitioner was not entitled to appeal the denial of a successive motion for relief from judgment. *See* [People v. Kikuchi, No. 326263, 2015 Mich. App. LEXIS 2527 (Mich. Ct. App. May 19, 2015)]() (unpublished order citing [Michigan Court Rule 6.502(G)]()). On May 2, 2016, the Michigan Supreme Court likewise denied leave to appeal because Petitioner's motion for relief from judgment was prohibited by [Michigan Court Rule 6.502(G)](). *See People v. Kikuchi, 499 Mich. 914, 878 N.W.2d 282 (Mich. 2016)*.

Meanwhile, on March 29, 2016, Petitioner signed his habeas corpus petitions and on March 31, 2016, the Clerk of this Court filed the petitions.[2] Petitioner alleges as grounds for relief that (1) the prosecution's arbitrary actions and deception during the plea process deprived him of due process, and **[*5]** (2) his right to counsel was violated during the plea process because defense counsel agreed with the prosecutor's assessment of the plea agreement and failed to explain the elements and nature of the crimes to him. In May and June of 2016, Petitioner filed his pending motions, and on October 5, 2016, Respondent filed his motion to dismiss the petition.

## II. DISCUSSION A. The Motion for Appointment of Counsel

Petitioner alleges in his motion for appointment of counsel that he cannot afford to retain counsel and that he could be transferred to the custody of immigration officials and deported to Japan in the near future. He asserts that he needs an attorney because he will not have access to a law library or to American legal materials if he is deported.

Petitioner has no right to appointment of counsel in a collateral attack on his convictions. [Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987)](). "[T]he right to appointed counsel extends to the first appeal of right, and no further." *Id.* Appointment of counsel in a civil proceeding such as this one "is justified only in exceptional circumstances." [Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003)]().

Petitioner has ably represented himself thus far, having filed a habeas petition with a supporting brief and multiple exhibits, three motions, and **[*6]** a reply to Respondent's motion to dismiss. Furthermore, he remains in the custody of Michigan correctional officials, and "the interests of justice" do not require appointment of counsel. [18 U.S.C. § 3006A(a)(2)(B)](). The court therefore denies Petitioner's motion for appointment of counsel (Dkt. # 9).

## B. The Motion to Amend

Petitioner seeks permission to amend his habeas petition to reflect the fact that, after he filed his petition, the Michigan Supreme Court denied leave to appeal the trial court's decision on his second motion for relief from judgment. Under [Federal Rule of Civil Procedure 15(a)(1)(B)](), a party may amend his or her pleading once

---

[2] The habeas petition was entered on the docket two times. Consequently, there are two identical petitions pending before the court: Dkt. # 1 and Dkt. # 3.

as a matter of course within twenty-one days after service of a responsive pleading. And under Rule 15(d), the Court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Petitioner's habeas petition was filed on March 31, 2016, and on May 2, 2016, the Michigan Supreme Court denied Petitioner's final application for leave to appeal. Respondent subsequently served Petitioner with his responsive pleading. Because Petitioner had not yet been served with the responsive pleading when he moved to amend his habeas **[*7]** petition, he was entitled to amend his habeas petition under Rule 15(a)(1)(B) to reflect the fact that he no longer has an appeal pending in any state court. And under Rule 15(d), Petitioner is entitled to supplement his habeas petition with a copy of the state supreme court's order dated May 2, 2016. Accordingly, the court grants Petitioner's motion to amend his habeas petition (Dkt. # 10).

**C. The Motion to Proceed Anonymously**

In his final motion, Petitioner seeks permission to proceed anonymously in this case on the basis that the victim of his crimes is his daughter. Petitioner contends that, by revealing his name, his daughter's identity will be disclosed and her privacy interest will be harmed.

"As a general rule, . . . parties may not litigate their disputes anonymously." Doe v. Greiner, 662 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (citing Fed. R. Civ. P. 10(a)). Instead, "a complaint must state the names of all parties." Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004) (citing Fed. R. Civ. P. 10(a)).

> "This requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." Sealed Plaintiff [v. Sealed Defendant, 537 F.3d 185, 188-89 (2nd Cir. 2008)]. Public scrutiny of proceedings regarding petitions for writs of habeas corpus is particularly important. See Mancuso v. Harris, 677 F.2d 206, 209 (2d Cir. 1982) ("[I]t is unquestionable that the federal court's review of the petition implicates **[*8]** the public interest in the enforcement of the criminal law in the state courts").

Greiner, 662 F. Supp. 2d at 360. Courts nevertheless may excuse plaintiffs from identifying themselves in certain circumstances. Several considerations determine whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. They include: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children. Doe v. Stegall, 653 F.2d 180, 185-86 (5th Cir. 1981).

Porter, 370 F.3d at 560.

Petitioner is challenging state governmental activity, and his lawsuit discloses intimate information, but he is not disclosing an intent to violate the law in the future, and he is not a child or filing on behalf of a child. It further appears that the victim of his crimes is no longer a child.

The court also notes that Petitioner pursued two rounds of post-conviction proceedings in state court using his own name, and, in this court, he filed his habeas petitions and two prior motions **[*9]** using his own name. Respondent has not disclosed the victim's name, and this court will not disclose the victim's name in its orders. As such, the court finds it unnecessary to allow Petitioner to proceed anonymously or to seal his case at this stage of the proceedings. Accordingly, the motion to proceed anonymously (Dkt. # 11) is denied.

**III. RESPONDENT'S MOTION TO DISMISS**

**A. The Statute of Limitations**

Respondent urges the court to dismiss the habeas petitions as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA established a one-year period of limitations for state prisoners to file federal habeas corpus petitions. Wall v. Kholi, 562 U.S. 545, 550, 131 S. Ct. 1278, 179 L. Ed. 2d 252 (2011) (citing 28 U.S.C. § 2244(d)(1)); Holbrook v. Curtin, 833 F.3d 612, 615 (6th Cir. 2016) (citing § 2244(d)(1)). The limitations period runs from the latest of following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the [*10] Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). "AEDPA also contains a tolling provision, which specifies that '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.'" Holbrook, 833 F.3d at 615 (quoting 28 U.S.C. § 2244(d)(2)).

A conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

> For petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

Gonzalez v. Thaler, 565 U.S. 134, 132 S. Ct. 641, 653-54, 181 L. Ed. 2d 619 (2012).

**B. Application**

Petitioner did not take a [*11] direct appeal from his convictions. Therefore, his judgment became final under § 2244(d)(1)(A) on April 2, 2008, when the one-year deadline expired for pursuing direct review in state court. See Gonzalez, 132 S. Ct. at 653-54; see also Mich. Ct. R. 7.205(G)(3). The statute of limitations began to run on the following day, Miller v. Collins, 305 F.3d 491, 495 n.4 (6th Cir. 2002), and it expired one year later on April 2, 2009. Petitioner did not file his habeas petitions until 2016, and his motions for relief from judgment, filed in 3013 and 2014, did not revive the limitations period or restart the clock at zero. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (quoting Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D. N.Y. 1998)). Consequently, the habeas petition is untimely.

**C. Delayed Start**

Petitioner argues in favor of a delayed start to the limitations period under 28 U.S.C. § 2244(d)(1)(D), the provision for newly discovered evidence. Petitioner purports to have new evidence that the prosecutor acted fraudulently in making him believe that no constitutional violations occurred during the plea process. (See Dkt. # 14, Pg. ID 570-71.) Petitioner asserts that the prosecutor falsely described the agreement as "less than standard." Petitioner also contends that the sentencing guidelines were improperly scored, that the dismissed charges did not benefit him, and that he was not informed of his rights or the elements of the crimes.

"Section 2244(d)(1)(D) runs [*12] the clock from 'the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence.'" McQuiggin v. Perkins, 133 S. Ct. 1924, 1932, 185 L. Ed. 2d 1019 (2013). Habeas petitioners carry the burden of showing that they exercised due diligence in discovering the factual predicate for their claims. McCoy v. Jones, 463 F. App'x 541, 549 (6th Cir. 2012); Stokes v. Leonard, 36 F. App'x 801, 804 (6th Cir. 2002) (citing Lott v. Coyle, 261 F.3d 594, 605-06 (6th Cir. 2001)).

The facts supporting Petitioner's claims -- that the prosecutor deceived him, that his trial attorney was ineffective, that his plea agreement was invalid, and that his sentencing guidelines were miscalculated -- could have been discovered with reasonable diligence when Petitioner was sentenced or shortly thereafter. Although he appears to allege that he did not discover the basis for his claims until March 11, 2013, see Brief in Support of Pet. for Writ of Habeas Corpus at 3, Dkt. # 1, Pg. ID 49, "an application that 'merely alleges that the applicant did not actually know the facts underlying his . . . claim' is insufficient to show due diligence." Stokes, 36 F. App'x at 804 (quoting In re Boshears, 110 F.3d 1538, 1540 (11th Cir. 1997)). Petitioner's complete failure to investigate the facts until years after he was sentenced does not satisfy the "due diligence" standard of § 2244(d)(1)(D). McCoy, 463 F. App'x at 549. The court therefore declines to start the limitations period as of

March 11, 2013.

### D. Equitable [*13] Tolling

In addition to arguing in favor of a delayed start to the running of the limitations period, Petitioner urges the court to equitably toll the limitations period. He maintains that he has been pursuing his rights diligently and that the State deceived him. (*See* Dkt. # 14, Pg. ID 571-72.)

The Supreme Court has "made clear that a [habeas] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)* (quoting *Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005))*; *see also Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749-50 (6th Cir. 2011)* (adopting *Holland's* two-factor test for determining whether a habeas petitioner is entitled to equitable tolling). In support of his argument that he has been pursuing his rights diligently, Petitioner points out that he filed two post-conviction motions for relief from judgment. The problem, however, is that Petitioner filed his first post-conviction motion almost six years after he was sentenced, and he took no action in his case during the interim. His inaction reflects a lack of diligence.

Petitioner also has not demonstrated that some extraordinary circumstance prevented him from filing a timely habeas petition. **[*14]** He contends that the sentencing guidelines were miscalculated and that the prosecutor deceived him by stating that the proposed plea agreement was "less than standard." He also claims that his attorney acted as a second prosecutor by recommending that he accept the prosecutor's plea offer. None of these allegations excuse the late filing of the habeas petitions.

The record, moreover, belies Petitioner's assertions, as well as Petitioner's additional contention that his guilty plea was involuntary and unknowing. Although the transcript to the plea proceeding apparently is unavailable, the state trial court determined in one of its post-conviction orders that the sentencing guidelines were accurately scored. *See People v. Kikuchi*, No. 07-004084-01-FC, Opinion, at 3 (Wayne Cty. Cir. Ct. Feb. 9, 2015); (Dkt. # 13-8, Pg. ID 359). And because Petitioner's minimum sentence of ten years (120 months) was lower than the minimum range suggested by the sentencing guidelines (126-210 months), the sentence offered in the plea agreement was "less than standard." (*See* Dkt. # 1, Ex. 5e, Pg. ID 75.)

The plea agreement was "less than standard" for another reason: it called for the dismissal of seven serious [*15] charges. Petitioner contends that the dismissal of the charges was of no benefit to him because his sentences would have run concurrently. But he would have faced a maximum sentence of life imprisonment if he had gone to trial and been convicted of one of the first-degree criminal-sexual-conduct charges. *See Mich. Comp. Laws § 750.520b(2)*. By pleading guilty, he limited his maximum sentence to thirty years. The trial court correctly concluded that there was no reason to believe Petitioner was misled about his plea agreement being "less than standard." *See People v. Kikuchi*, No. 07-004084-01-FC, Opinion (Wayne Cty Cir. Ct. Feb. 9, 2015); (Dkt. # 13-8, Pg. ID 360). And because the plea agreement benefitted Petitioner, defense counsel was not ineffective for recommending that Petitioner accept the plea offer.

There also is no reason to believe that Petitioner's plea was involuntary or that he was not notified of his rights. In his Notice of Acceptance, dated March 16, 2007, Petitioner acknowledged the rights that he was waiving by pleading guilty. (*See* Dkt. # 1, Pg. ID 73.) Petitioner also waived his right to claim (1) that the guilty plea was the result of promises or threats that were not disclosed to the court at **[*16]** the plea proceeding and (2) that it was not his choice to plead guilty. (*Id.*)

As for Petitioner's allegation that he was unaware of the law until he researched the issues himself, the Sixth Circuit has held that a prisoner's *pro se* status and ignorance of the law do not amount to extraordinary circumstances warranting equitable tolling of the limitations period. *Tanner v. Yukins, 776 F.3d 434, 446 (6th Cir. 2015)* (collecting cases). For all the foregoing reasons, the court declines to equitably toll the limitations period.

### E. Actual Innocence

Actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations. *Perkins, 133 S. Ct. at 1928*. But Petitioner pleaded guilty, and he does not claim to be innocent. "AEDPA's time limitations apply to the typical case in

which no allegation of actual innocence is made." *Id. at 1933*. Petitioner therefore may not pass through the "actual innocence" gateway and have his claims heard on the merits.

## IV. CONCLUSION

Petitioner filed his habeas petitions after the statute of limitations expired, and he is not entitled to statutory or equitable tolling of the limitations period. He also is not entitled **[*17]** to pass through the "actual innocence" gateway and to have his claims heard on the merits. The court therefore dismisses the habeas corpus petitions (Dkt. # 1 and Dkt. # 3) as untimely.

## V. DENYING A CERTIFICATE OF APPEALABILITY

Petitioner may not appeal the court's order dismissing his habeas petitions unless a district or circuit judge issues a certificate of appealability. *28 U.S.C. § 2253(c)(1)(A)*; *Fed. R. App. P. 22(b)(1)*. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *28 U.S.C. § 2253(c)(2)*. When, as here, a district court rejects a habeas petition on procedural grounds without reaching the merits of the petitioner's underlying claims, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000))*.

Reasonable jurists would not find it debatable whether the court correctly decided that Petitioner's habeas petitions are time-barred. Nor would reasonable jurists debate whether the petitions state a valid claim of the denial of a constitutional right. The court **[*18]** therefore declines to issue a certificate of appealability.

## VI. CONCLUSION

Petitioner's habeas petition is untimely. Habeas relief, therefore, is not warranted. Accordingly,

IT IS ORDERED that Respondent's motion to dismiss (Dkt. # 12) is GRANTED and the habeas petitions (Dkt. # 1 and Dkt. # 3) are DISMISSED as untimely.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that Petitioner's motion for appointment of counsel (Dkt. # 9) and motion to proceed anonymously (Dkt. # 11) are DENIED.

IT IS FURTHER ORDERED that Petitioner's motion for leave to amend (Dkt. # 10) is GRANTED.

Dated: January 31, 2017

/s/ Robert H. Cleland

ROBERT H. CLELAND

UNITED STATES DISTRICT JUDGE

**End of Document**

## *Koe v. Univ. Hosps. Health Sys.*

United States Court of Appeals for the Sixth Circuit

March 8, 2024, Filed

No. 22-3952

**Reporter**
2024 U.S. App. LEXIS 5695 *; 2024 WL 1048184

JOHN KOE, a pseudonym, Plaintiff-Appellant, v. UNIVERSITY HOSPITALS HEALTH SYSTEMS, INC., et al., Defendants-Appellees.

**Notice:** CONSULT *6TH CIR. R. 32.1* FOR CITATION OF UNPUBLISHED OPINIONS AND DECISIONS.

**Subsequent History:** Rehearing denied by, En banc *Koe v. Univ. Hosps. Health Sys., Inc., 2024 U.S. App. LEXIS 10897 (6th Cir., May 3, 2024)*

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

*Koe v. Univ. Hosps. Health Sys., 2022 U.S. Dist. LEXIS 187576, 2022 WL 7579939 (N.D. Ohio, Oct. 13, 2022)*

**Counsel:** JOHN KOE, a pseudonym, Plaintiff - Appellant, Pro se, Novelty, OH.

For UNIVERSITY HOSPITALS HEALTH SYSTEMS, INC., UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER, Defendants - Appellees: David A. Campbell, III, Donald Gabriel Slezak, Lewis Brisbois Bisgaard & Smith, Cleveland, OH.

**Judges:** Before: SUTTON, Chief Judge; NORRIS and SILER, Circuit Judges.

## Opinion

### ORDER

John Koe, an anonymous pro se Ohio plaintiff, appeals the district court's dismissal of his federal employment-discrimination and retaliation complaint without prejudice upon initial screening under *28 U.S.C. § 1915(e)* for lack of jurisdiction. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See Fed. R. App. P. 34(a)*. We affirm for the reasons that follow.

Koe was a medical resident at Case Western Reserve University/University Hospitals Cleveland Medical Center from June 2019 until he was discharged in April 2021, ostensibly because he lost his privileges to practice at the Cleveland Veterans Affairs Medical Center. Koe claimed, however, that he was terminated because he resisted having to participate in unspecified mental [*2] health counseling through the hospital's employee assistance program (EAP). Koe's complaint is unclear as to what prompted his supervisors to order this counseling. Koe claimed, however, that the hospital's use of the EAP in this fashion was abusive, and he filed a complaint with the National Labor Relations Board and the Equal Employment Opportunity Commission over this practice. Koe also complained to his supervisors that one of his colleagues subjected him to a hostile work environment by quizzing him about his family's medical history.

Koe, proceeding pro se and in forma pauperis, filed this employment-discrimination and retaliation action[1] against University Hospitals Health System, Inc. and University Hospitals Cleveland Medical Center. In the complaint, Koe moved the district court for permission to proceed anonymously, arguing that bringing this action would require him to disclose unspecified information of the "utmost intimacy" from his counseling sessions. Koe further contended that "medical decisions relating to his health care and treatment are sensitive and personal matters warranting use of a pseudonym." And he suggested that not allowing him to proceed anonymously would [*3] violate the *Americans with Disabilities Act*'s provisions concerning the privacy of medical information.

---

[1] Koe brought claims under the *Americans With Disabilities Act, 42 U.S.C. § 12112, et seq.*, *Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.*, and the *Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff, et seq.*

The defendants responded with a motion to dismiss, arguing that the court lacked subject-matter jurisdiction over the case because, by proceeding anonymously, Koe had not properly commenced an action under Federal Rules of Civil Procedure 3, 7, and 10. Additionally, the defendants asked the district court to issue a protective order under Federal Rule of Civil Procedure 26(c)(1) to prohibit Koe from communicating directly with their officers, employees, and affiliates, and to direct all of his communications concerning the lawsuit to their trial counsel. The defendants attached to their motion copies of emails that Koe had sent to some of his former colleagues that the recipients viewed as harassing and correspondence that Koe had sent to the defendants' directors in which he disparaged their trial counsel. The district court granted the defendants' motion for a protective order before Koe had an opportunity to respond because they had demonstrated "consistent and routine inappropriate communications from *pro se* Plaintiff John Koe directly to various employees of the Defendants."

The district court granted Koe's motion to proceed in forma pauperis, reviewed his complaint to determine whether **[*4]** it was subject to dismissal under § 1915, and concluded that he had not established good cause to proceed anonymously. Although Koe had alleged that the lawsuit would require him to disclose intimate information, the court found that he had not shown that his case was different from cases brought by other persons with mental-health disabilities. Further, the court found that Koe had not identified any specific harm that would result from the disclosure of his identity. Finally, the court reasoned that the factual allegations in Koe's complaint, including his medical specialty, dates of employment, and the names of the persons involved in the EAP assessment, made it easy to identify him. The court concluded therefore that Koe's privacy interests did not outweigh the presumption in favor of open judicial proceedings. And because Koe was not entitled to proceed anonymously, the district court dismissed the complaint without prejudice for lack of jurisdiction.

The district court gave Koe the opportunity to reopen the case by filing an amended complaint identifying himself within 14 days. Instead of filing an amended complaint, Koe moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. The district court **[*5]** denied that motion.

On appeal, Koe argues that the district court erred in concluding that it lacked jurisdiction over the case due to his use of a pseudonym. Further, Koe contends that the district court denied him a full and fair opportunity to establish that he should be allowed to proceed anonymously. Lastly, Koe argues that the district court's protective order violated his rights under the First Amendment and the Norris-LaGuardia Act.

A complaint usually must state the names of all parties. Fed. R. Civ. P. 10(a). A district court may, however, permit a party to proceed anonymously after considering, among other factors, whether the case challenges government activity, whether the party would be compelled to disclose "information of the utmost intimacy" or "an intention to violate the law," and whether the party is a child. Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004) (quotation omitted). "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'" Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) (quoting Doe v. Borough of Morrisville, 130 F.R.D. 612, 614 (E.D. Pa. 1990)). "But the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably **[*6]** secretive about their medical problems." Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 872 (7th Cir. 1997). The key inquiry is whether the party's interest in privacy outweighs the presumption in favor of open judicial proceedings. D.E. v. John Doe, 834 F.3d 723, 728 (6th Cir. 2016); Porter, 370 F.3d at 560. We review a district court's decision denying a party permission to proceed anonymously for an abuse of discretion. Cf. Porter, 370 F.3d at 560.

In this case, Koe claimed only that his lawsuit would require him to disclose undescribed intimate information from his counseling sessions. But Koe did not specify how he would be harmed by the disclosure of his identity. See Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068 (9th Cir. 2000) (holding that an anonymous party's fear of harm must be reasonable). And Koe could have been protected from the disclosure of private or embarrassing information that he revealed in his counseling sessions by filing the records under seal. See Blue Cross, 112 F.3d at 872 ("Should 'John Doe's' psychiatric records contain material that would be highly embarrassing to the average person yet somehow pertinent to this suit and so an appropriate part of the judicial record, the judge could require that this material be placed under seal.").

Koe's case is therefore materially indistinguishable from

*Doe v. Carson, Nos. 19-1566/19-1714, 2020 U.S. App. LEXIS 14520, 2020 WL 2611189 (6th Cir. May 6, 2020)*. Like Koe in this case, the plaintiff in *Carson* claimed that she was discriminated against on the basis of a **[*7]** mental disability and wanted to proceed under a pseudonym to avoid the stigma associated with mental illness. "But Doe failed to identify any exceptional circumstances distinguishing her case from other cases brought by plaintiffs claiming disability discrimination who suffer from mental illness." *2020 U.S. App. LEXIS 14520, [WL] at *3*. Moreover, Doe did not identify "any specific harm arising from disclosure of her identity." *Id.* We concluded therefore that the district court did not abuse its discretion in refusing the plaintiff permission to proceed anonymously. *See id.*

It is true that the district court might have erred in dismissing Koe's complaint for lack of jurisdiction. Compare *Citizens for a Strong Ohio v. Marsh, 123 Fed. Appx. 630, 637 (6th Cir. 2005)* ("[T]he federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989)*)), *with B.R. v. F.C.S.B., 17 F.4th 485, 496 (4th Cir. 2021)* (suggesting that *Gibbs* is a "drive-by jurisdictional ruling" and holding that pseudonymous filings do not affect the subject-matter jurisdiction of federal courts) (quoting *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*)); *but see M.A.C. v. Gildner, 853 F. App'x 207, 210 (10th Cir. 2021)* (adhering to circuit precedent that "proceeding anonymously without permission is a jurisdictional defect that may (and, indeed, must) be raised *sua sponte*"). Nevertheless, dismissal of Koe's complaint for failure to comply **[*8]** with *Rule 10(a)* would have been appropriate. See *Carson, 2020 U.S. App. LEXIS 14520, 2020 WL 2611189, at *3*; *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est., 596 F.3d 1036, 1045-46 (9th Cir. 2010)*. Consequently, the district court's conclusion that it lacked subject-matter jurisdiction over Koe's complaint was at worst a harmless error. See *28 U.S.C. § 2111*; *see also Seaton v. TripAdvisor LLC, 728 F.3d 592, 601 n.9 (6th Cir. 2013)* ("[W]e may affirm the district court's judgment on any basis supported by the record.").

We also reject Koe's contention that he did not have a fair opportunity to make his case to proceed anonymously. Koe included a motion to proceed under a pseudonym in his complaint, and he presented his reasons for using an alias and cited case law in support of that argument. Moreover, the defendants filed a motion to dismiss on the ground that Koe did not move for permission to proceed under a pseudonym before filing his complaint. Although Koe did not respond to that motion, he did file a *Rule 59(e)* motion that reiterated and amplified his reasons for proceeding under a pseudonym. In sum, the record shows that Koe had a fair opportunity to present his position to the district court. *Cf. Smith v. Perkins Bd. of Educ., 708 F.3d 821, 831 (6th Cir. 2013)*; *Nagarajan v. Jones, 33 F. App'x 791, 792 (6th Cir. 2002)*.

Accordingly, we affirm the district court's dismissal of Koe's complaint without prejudice.

We conclude, however, that *Rule 26(c)(1)* did not authorize the district court to enter the protective order requested by the defendants. *Rule 26(c)(1)* governs **[*9]** harassing and burdensome discovery requests. See *Serrano v. Cintas Corp., 699 F.3d 884, 901 (6th Cir. 2012)*. But here, the defendants were not seeking relief from improper discovery requests. Rather, they requested and received what amounts to a no-contact order because of Koe's allegedly harassing emails and correspondence to their officers and employees. *Rule 26(c)(1)* plainly does not apply in this situation. See *Violette v. P.A. Days, Inc., 427 F.3d 1015, 1017 (6th Cir. 2005)* ("[C]ourts must begin their interpretation of the Federal Rules, as with other laws, 'with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985)*)); *Smith v. Ky. Fried Chicken, No. 06-426-JBC, 2007 U.S. Dist. LEXIS 3789, 2007 WL 162831, at *5 (E.D. Ky. Jan. 18, 2007)* ("*Rule 26(c)* deals with protection from abusive and harassing discovery; it is not meant to limit a party's communications with other parties."). And there are state remedies available if Koe's allegedly harassing communications continue and are sufficiently severe. See *Ohio Rev. Code § 2903.211(A)(1)* (prohibiting a pattern of conduct that knowingly causes mental distress to another person).

For these reasons, we **AFFIRM** the district court's judgment, and we **REMAND** the case to the district court with instructions to vacate the protective order.

**End of Document**