UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

    Plaintiff,

v.

UNIVERSITY OF DETROIT MERCY
SCHOOL OF DENTISTRY, and
UNIVERSITY OF DETROIT MERCY,

    Defendants.
_____/

Case No. 24-cv-11106
Honorable Linda V. Parker

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM AND DENYING THIRD PARTY'S MOTION TO INTERVENE AS MOOT

Plaintiff John Doe brought this claim against Defendants the University of Detroit Mercy ("UDM") and University of Detroit Mercy School of Dentistry ("UDM-SOD") (collectively "Defendants" or the "University") for his dismissal from the University's dentistry program and the procedural processes preceding the dismissal and his appeal. (ECF No. 1 at Pg ID 1-2.) Plaintiff alleges several violations under Michigan law, including (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) breach of implied understanding precluding arbitrary dismissal from the dental program. (*Id.* at Pg ID 31-38.)

This matter is presently before the Court on Plaintiff's motion to allow him to proceed under a pseudonym and subsequently enter a protective order. (ECF

1

No. 2.)  A non-party, Charles Blackwell, seeks to intervene only in Plaintiff's attempt to use a pseudonym and asks the Court to deny Plaintiff's motion.  (ECF No. 8.)  Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the following reasons, the Court denies Plaintiff's motion and Blackwell's motion.

**I.  Background**

Plaintiff was a student in the Doctor of Dental Surgery program at UDM-SOD from fall 2016 to February 2019.  (ECF No. 1 at Pg ID 3.)  During his time as a student at UDM-SOD, Plaintiff took advantage of the personal counseling services the University offered to its students.  (*Id*. at Pg ID 5.)  On or around November 2018, UDM-SOD assigned Plaintiff a new counselor, Taryn Bailey Andersen, a social worker with a limited license.  (*Id*. at Pg ID 6.)  Plaintiff confided in Ms. Andersen, sharing with her information about an incident in 2013 when he was an undergraduate student at Baylor University.  (*Id*.)  A female classmate "stopped communicating with him" and later made "false allegations about him" to the campus police related to harassment and stalking.  (*Id*. at Pg ID 5-6, 14.)

The news about the incident at Baylor University led Ms. Andersen to investigate the incident and inquire about Plaintiff's relationships with his

2

classmates at UDM-SOD. (*Id*.) Ms. Andersen learned that Plaintiff asked fellow dental student Jane Roe on a date, and Jane Roe rejected him. (*Id*. at Pg ID 5.) She also discovered that Plaintiff had other unpleasant interactions with his UDM-SOD classmates. (*See id*. at Pg ID 12.) For instance, Plaintiff conversed with another female student on WhatsApp where they discussed dating, relationships, controversial adult topics, and an R-rated puppet video link that Plaintiff shared. (*Id*. at Pg ID 5.) After learning about these interactions and obtaining private text messages between Plaintiff and his classmates, Ms. Andersen believed that Plaintiff was a danger or threat to others and suggested a no-contact order to prohibit Plaintiff from having contact with Jane Roe. (*Id*. at Pg ID 8, 11.) UDM-SOD issued the no-contact order against Jane Roe in November 2018, which Plaintiff eventually violated. (*Id*. at Pg ID 8, 15.) UDM-SOD also reprimanded Plaintiff for misconduct against his other classmates. (*Id*. at Pg ID 9.)

In addition to the above incidents, another UDM-SOD student filed a Title IX complaint against Plaintiff in December 2018, "alleging his involvement in professional misconduct, specifically, bullying, intimidation, misuse of social media, as reported by DS1 classmates based on his WhatsApp and text messages." (*Id*. at Pg ID 15) (quotations omitted).

In the background of Plaintiff's issues with his classmates was his struggle with attention deficit hyperactivity disorder ("ADHD"), an issue of which he made

3

the University aware. (*Id*. at Pg ID 4.) UDM-SOD recommended a psychiatrist who provided Plaintiff with counseling and treatment for his ADHD. (*Id*.) The side effects of the ADHD medication caused him to experience "episodes of mania and agitation . . . making him acutely aware, responsive, and overly talkative." (*Id*. at Pg ID 5.)

As a result of Plaintiff's reported misconduct and violation of the no-contact order, the University placed Plaintiff on an involuntary and indefinite leave of absence. (*Id*. at Pg ID 15-16.) The University advised Plaintiff that "he had failed to meet 'expected standards for Fitness for the Profession,'" in violation of UDM-SOD's academic policies. (*Id*. at Pg ID 16.) Accordingly, Plaintiff was later dismissed from the dentistry program "based on faculty and administrators' observations of [his] pattern of conduct." (*Id*. at Pg ID 20) (quotations omitted). Plaintiff unsuccessfully appealed the University's decision to dismiss him. (*Id*. at 20-21.)

## II. Applicable Law and Analysis

The Court addresses, in turn, Plaintiff's arguments to proceed anonymously and for a protective order, Defendants' response, and Blackwell's motion to intervene.

### A. Use of a Pseudonym

4

Generally, "a complaint must state the names of all parties." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citing Fed. R. Civ. P. 10(a)). The identification of parties "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). However, there are special circumstances that justify not utilizing a party's actual name. *Porter*, 370 F.3d at 560. These exceptions include:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id*. (citing *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981)). In addition to these exceptions, the Court may use its discretion to weigh other relevant considerations particular to a case. *See Koe v. Univ. Hosps. Health Sys., Inc.*, No. 22-3952, 2024 WL 1048184, at *2 (6th Cir. Mar. 8, 2024). The key standard the Court must consider is whether "a plaintiff's privacy interests *substantially outweigh* the presumption of open judicial proceedings." *Id*. (emphasis added).

In balancing these considerations, courts have held that the use of a pseudonym outweighs any prejudice to a defendant or the public in instances where the plaintiff would be subject to danger or retribution, as well as in matters

involving victims of sexual assault, including non-party victims. *See, e.g.*, *John Does 1-4 v. Snyder*, No. 12-11194, 2012 WL 1344412, at *2 (E.D. Mich. Apr. 18, 2012) (explaining that anonymity is appropriate to prevent retaliation or threatened harm against a vulnerable plaintiff); *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 713 (E.D. Mich. 2020) ("Courts in cases that involve victims of sex traffickers routinely allow plaintiffs . . . to proceed under a pseudonym due to the sensitive and intimate nature of their allegations."); *Doe v. Mich. State Univ.*, No. 1:19-CV-226, 2019 WL 13417783, at *1 (W.D. Mich. Aug. 14, 2019) ("Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects."); *Kikuchi v. Perry*, No. 16-11182, 2017 WL 411344, at *3 (E.D. Mich. Jan. 31, 2017) (denying the petitioner's request to proceed anonymously but ensuring that the victim's name, a non-party, will remain undisclosed).

   1. *John Doe*

With respect to Plaintiff, only the second exception is at issue. As to the first factor, Plaintiff is not challenging a governmental activity as Defendants are a "private, non-profit university." (ECF No. 1 at Pg ID 2.) Plaintiff's reasons for requesting to proceed pseudonymously are to "protect his name and reputation" and prevent himself from being associated with accusations of sexual harassment, making the third factor inapplicable here. (ECF No. 2 at Pg ID 43.) As to the

6

fourth factor, Plaintiff is not a minor. Thus, the Court must determine whether this matter will require Plaintiff to disclose information of the "utmost intimacy."

First, Plaintiff asserts that if he is not permitted to proceed in this litigation anonymously, he "will be required to disclose information of the utmost intimacy." (*Id*. at Pg ID 48.) The intimate matters he claims are at issue are "his personal dating and sexual behaviors, medical history, discussions with therapists and other medical professionals, and severe allegations of purported professional misconduct, stalking, and harassment," all of which he believes are highly sensitive and linked to many false allegations and privacy concerns. (*Id*. at Pg ID 48.) Defendants take no position on Plaintiff's motion. (ECF No. 13 at Pg ID 345-46.)

Many of the cases that Plaintiff relies on are inapposite here because the plaintiffs in those cases are not similarly situated with regard to what matters qualify as the "utmost intimacy." *See, e.g.*, *Mich. State Univ.*, 2019 WL 13417783, at *1; *Doe v. Univ. of St. Thomas*, No. 16-CV-1127-ADM-KMM, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016); *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-CV-170, 2018 WL 5929647, at *3 (W.D. Va. Nov. 13, 2018); *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016). The plaintiffs that were successful with proceeding under a pseudonym were accused of and subject to university investigations and disciplinary actions

7

involving allegations of sexual assault and even rape. *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-CV-170, 2018 WL 5929647, at *1 (W.D. Va. Nov. 13, 2018). The courts in those cases reasoned that the sexual misconduct at issue would reveal highly intimate details about the parties' personal lives and highly sensitive topics, such as sexual acts between college students. *See, e.g.*, *Mich. State Univ.*, 2019 WL 13417783, at *1. Moreover, Plaintiff's ADHD diagnosis is not the type of medical condition that courts in this district generally view as so intimate and stigmatizing to justify proceeding anonymously. *G.E.G. v. Shinseki*, No. 1:10-CV-1124, 2012 WL 381589, at *2 (W.D. Mich. Feb. 6, 2012) ("[M]atters of a sensitive and highly personal nature [include] birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families."); *See Doe v. The Univ. of Akron*, No. 5:15-CV-2309, 2016 WL 4520512, at *3 (N.D. Ohio Feb. 3, 2016) (same).

The underlying misconduct at issue here details Plaintiff sending risqué and controversial text messages and website links, asking students on dates, being labeled a "stalker," seeking treatment and experiencing side effects from his ADHD medication, and being dismissed from the University as a result. (*See* ECF No. 1 at Pg ID 20, 24-25.) While these are personal and serious matters to Plaintiff, they are insufficient to reach the high burden of the "utmost intimacy" that outweighs the public's interest in open judicial proceedings.

8

Next, Plaintiff argues that his identity should remain secret because "the revelation of his identity would cause [him] severe harm." (ECF No. 2 at Pg ID 45.) He explains that "coming out of the shadows" and "disclos[ing] [the] false allegations against him" will damage his reputation, hinder future job employment and school admission, and cause him emotional suffering. (*Id*. at Pg ID 46.) Yet Plaintiff has not provided any support to show that this matter will result in the type of responses or danger that courts typically try to prevent. *See Snyder*, 2012 WL 1344412, at *2 ("[P]laintiff must demonstrate that . . . retaliation is not merely hypothetical but based in some real-world evidence; a simple fear is insufficient.") (citing *Does v. Shalushi*, No. 10–11837, 2010 WL 3037789, at *3 (E.D. Mich. July 30, 2010)). With respect to his reputation, Plaintiff is attempting to clear his name of the allegations and save face by using a pseudonym. While the privacy concerns of embarrassment are valid, they "do not weigh as heavily as in some other circumstances involving more serious risk of social stigma or disclosure of more intimate personal information." *Doe v. N.C. Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, at *3 (M.D.N.C. Apr. 15, 1999); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("Lawsuits are public events . . . . [t]he risk that a plaintiff may suffer some embarrassment is not enough.")

Regarding the potential impact and negative scrutiny from future employers and schools, Plaintiff's argument is unpersuasive as such an "interest is best

9

understood as an economic one." *Roe v. Doe*, 319 F. Supp. 3d 422, 428 (D.D.C. 2018). "And 'a threat of economic harm alone does not generally permit a court to let litigants proceed [sic] under pseudonym.'" *Id*. (quoting *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005)). The alleged emotional harm also weighs against use of a pseudonym. Plaintiff recounts that "[h]e has already been dismissed from the University, is ostracized by his peers, and cannot pursue the career he so longs to pursue in dentistry" (ECF No. 2 at Pg ID 46), making clear that any harm that would result from disclosure of his identity has already occurred, *see e.g.*, *Doe v. Mass. Inst. of Tech.,* 46 F.4th 61, 71 (1st Cir. 2022) ("[T]he injury litigated against would be *incurred as a result of* the disclosure of the [party's] identity.") (emphasis added). Plaintiff also mentions that he is at risk for harassment and public hostility due to the recent sexual assault cases involving Dr. Larry Nassar and Michigan universities. (ECF No. 2 at Pg ID 47.) However, as explained, Plaintiff has not been accused of sexual assault.

Next, Plaintiff asserts that there will be a chilling effect on similarly situated future litigants if his motion is denied. (*Id*. at Pg ID 49.) Plaintiff relies on a First Circuit case that labels "intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors" as the main considerations for deterrence. *Mass Inst. of Tech.*, 46 F.4th at 71. As discussed, the allegations underlying this litigation differ from the plaintiff in

10

*Massachusetts Institute of Technology* and other cases where courts grant the use of pseudonyms to prevent any chilling effects. The allegations at issue here involve harassment, stalking, and professional misconduct, which fall outside of the "intimate issue" category. Thus, the Court does not foresee that potential litigants in Plaintiff's shoes will be deterred from litigation.

Lastly, Plaintiff maintains that the identity of non-parties, Jane Roe and other UDM-SOD classmates, will be disclosed if his identity is made public. (ECF No. 2 at Pg 48.) However, this argument is purely speculative as Plaintiff does not articulate how they will be identified. Moreover, Plaintiff "has not disclosed [his classmates' names or Jane Roe's] name, and this court will not disclose [their] name[s] in its orders. As such, the [C]ourt finds it unnecessary to allow [Plaintiff] to proceed anonymously or to seal his case at this stage of the proceedings." *Kikuchi*, 2017 WL 411344, at *3.

2. Jane Roe

Defendants do not opine on whether Plaintiff should be allowed to proceed under a pseudonym but instead focus on protecting the identity of non-party Jane Roe. (ECF No. 13 at Pg ID 346-47.) The Court agrees with Defendants that Jane Roe's identity should remain protected because there is no legitimate purpose in identifying her since she is the alleged victim of Plaintiff's conduct, and she is not involved in this litigation. *See Kikuchi*, 2017 WL 411344, at *9.

Most lawsuits bring up matters that parties do not want to be revealed, and the Court holds an obligation to evaluate if there is legitimate justification, based on the *Porter* factors and other relevant considerations, to allow a party to proceed anonymously.  As to Plaintiff, his privacy interests do not substantially outweigh the presumption of open judicial proceedings and do not constitute an exceptional circumstance.  Therefore, Plaintiff must use his name in this matter.  Since they are not actively involved in this litigation, Jane Roe's identity and other UDM-SOD students involved in the underlying action will remain undisclosed.

### B. Plaintiff's Request for a Protective Order

Additionally, Plaintiff asks that if this Court grants his motion to proceed, that the Court enters a protective order to further protect his identity throughout the Court's proceedings, especially during discovery.  (ECF No. 2 at Pg ID 51.)  Since this Court denies Plaintiff's use of a pseudonym in this matter, filing a proposed protective order with the Court is unnecessary.

### C. Proposed Intervenor's Motion to Intervene

Blackwell filed a motion to permissively intervene in this action for the limited purpose of challenging Plaintiff's attempt to proceed in this case under a pseudonym.  (ECF No. 8.)  The Court takes into consideration the arguments Blackwell presents, but the Court's decision herein denying Plaintiff's Motion to

Proceed Under a Pseudonym leads the Court to also deny Blackwell's request. Thus, the Court denies Blackwell's Motion to Intervene as moot.

## III. Conclusion

For the reasons stated, the Court finds that Plaintiff's motion does not meet the *Porter* exceptions, nor has he presented sufficient reasons for proceeding under a pseudonym. Therefore, a protective order to protect Plaintiff's identity during discovery is unnecessary, and Blackwell does not need to intervene on this issue.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Proceed Under a Pseudonym (ECF No. 2) is **DENIED** and Proposed Intervenor's Motion to Intervene for the Limited Purpose of Challenging the Plaintiff's Use of a Pseudonym (ECF No. 8) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff amend his Complaint to identify himself within thirty days of entry of this Order.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 6, 2025